IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY CHAVEZ,

    Plaintiff,                                                    Civ. No. 19-0391 JAP/GJF

    v.

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
CHAVES, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremy Chavez filed this lawsuit in New Mexico state court alleging numerous violations of state and federal law.[1] Defendants the Board of County Commissioners of the County of Chaves and Tony Sedillo removed the case to federal court.[2] Shortly thereafter, the Board of County Commissioners of the County of Chaves, Albert Padilla, and Tony Sedillo (collectively, "County Defendants") sought dismissal of all Plaintiff's federal claims under Federal Rule of Civil Procedure ("Rule") 12(c).[3] The Court will grant in part and deny in part County Defendants' Motion.

## BACKGROUND

---

[1] Plaintiff has filed three different complaints. *See* COMPLAINT FOR NEGLIGENCE PER SE, DEPRIVATION OF PRIVATE RIGHTS, AND CIVIL CONSPIRACY ("Complaint") (Doc. 1-1), FIRST AMENDED COMPLAINT FOR NEGLIGENCE PER SE, DEPRIVATION OF PRIVATE RIGHTS, CONSTITUTIONAL CLAIMS UNDER THE U.S. AND NEW MEXICO CONSTITUTIONS, AND CIVIL CONSPIRACY ("FAC") (Doc. 1-2), SECOND AMENDED COMPLAINT FOR NEGLIGENCE PER SE, DEPRIVATION OF PRIVATE RIGHTS, CONSTITUTIONAL CLAIMS UNDER THE U.S. AND NEW MEXICO CONSTITUTIONS, AND CIVIL CONSPIRACY ("SAC" or "operative complaint") (Doc. 1-3).
[2] *See* NOTICE OF REMOVAL ("Notice") (Doc. 1).
[3] *See* COUNTY DEFENDANTS' RULE 12(c) MOTION TO DISMISS ALL FEDERAL CLAIMS ASSERTED AGAINST COUNTY DEFENDANTS IN PLAINTIFF'S SECOND AMENDED COMPLAINT ("Motion") (Doc. 25). The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE TO [sic] COUNTY DEFENDANTS' RULE 12(c) MOTION TO DISMISS ALL FEDERAL CLAIMS ASSERTED AGAINST COUNTY DEFENDANTS IN PLAINTIFF'S SECOND AMENDED COMPLAINT [Doc. 25] ("Response") (Doc. 29); COUNTY DEFENDANTS' REPLY IN SUPPORT OF COUNTY DEFENDANTS' RULE 12(c) MOTION TO DISMISS ALL FEDERAL CLAIMS ASSERTED AGAINST COUNTY DEFENDANTS IN PLAINTIFF'S SECOND AMENDED COMPLAINT ("Reply") (Doc. 30).

As alleged in Plaintiff's operative complaint, on November 29, 2013, officers from the Chaves County Sheriff's Office and the municipalities of Dexter, Hagerman, and Lake Arthur executed a search warrant for Plaintiff's residence. SAC at ¶¶ 28, 29, 32.[4] Plaintiff protested and asked to see the search warrant. *Id.* at ¶ 31. When he did so, officers purportedly took Plaintiff into custody and placed him in the back of a police vehicle. *Id.*

During the search of Plaintiff's residence, officers discovered a coin collection and an array of small gold bars. *Id.* at ¶ 34. Sherriff Deputy Albert Padilla believed these items had been stolen by Plaintiff. *Id.* at ¶¶ 30, 34. Plaintiff, however, asserts that he legally obtained the gold bars—nine gold bars, approximately ten ounces each to be exact. *Id.* at ¶ 22. Regardless of how Plaintiff came to possess the gold bars, Plaintiff avers that after the officers searched his residence, the bars were gone.

According to Plaintiff, his friend Christabelle Abbot knew the gold bars existed. *Id.* at ¶ 26. Plaintiff maintains that immediately after the officers concluded their search and left the premises, Abbot entered the residence and searched for the bag that she knew contained the coin collection and the gold bars. *Id.* at ¶¶ 39, 40. To her dismay, she could not find the bag or the gold bars. *Id.* at ¶ 40. Plaintiff does not explain when he came to know that Abbot had searched for and failed to find the gold bars.

The officers transported Plaintiff to the Chaves County Detention Center. *Id.* at ¶ 42. There, Plaintiff spent approximately five months in custody on state charges. *Id.* at ¶¶ 43, 46. The State

---

[4] Paragraph 28 of the operative complaint states that the search occurred on November 29, 2018. *See* SAC ¶ 28. Meanwhile, paragraph 45 states that the search occurred in November 2017. *See id.* at ¶ 45. But the remainder of the operative complaint references dates in November 2013. *See id.* at ¶ 32 ("This search warrant was executed in the late hours of November 29, 2013 and lasted into the early hours of November 30, 2013."); ¶ 34 ("On 11-30-2013 at approximately 2131 hours, Affiant executed the search warrant . . . ."); ¶ 58 ("During the search of November 29–30, 2013, one of the items seized by police was a shotgun . . . ."). The Court proceeds with the understanding that the search occurred in November 2013.

ultimately dismissed the charges against Plaintiff. *Id.* at ¶ 47. When Plaintiff returned to his residence, he looked for the bag that held his coin collection and gold bars but could not find it. *Id.* at ¶ 44.

Plaintiff alleges that three non-identical Search Warrant Inventory Returns resulted from the search of his residence. *Id.* at ¶ 36. He further claims that none of the inventory returns list the gold bars as items that officers seized. *Id.* at ¶ 37. Plaintiff maintains that officers also seized his shotgun but failed to list that on the inventory reports as well. *Id.* at ¶¶ 58, 60–61.

Over a year after the search, in March 2015, Roswell Police Officer Michael Law stopped Plaintiff to conduct a traffic stop. *Id.* at ¶¶ 62, 63. At this point, Plaintiff's allegations become less clear. Plaintiff seems to claim that Law obtained a search warrant for Plaintiff's vehicle. *Id.* at ¶¶ 63, 64. From what the Court can gather from the operative complaint, Plaintiff later received an inventory list of items seized during the search of his vehicle, and that list included the shotgun that was purportedly seized during the search of his residence in 2013. *Id.* at ¶ 64.

Skip forward several years to February 24, 2017: Plaintiff alleges that his father, Gilbert Chavez, went to the Chaves County Sherriff's Office to retrieve Plaintiff's belongings that officers had seized during the 2013 search. *Id.* at ¶ 48. There, Deputy Sergeant Tony Sedillo initially returned some, but not all of Plaintiff's possessions. *Id.* Specifically, Sedillo allegedly did not return Plaintiff's wallet, coin collection, or the gold bars. *Id.* After some arguing, Sedillo gave to Chavez Plaintiff's wallet and the bag that had contained the coin collection and gold bars. *Id.* at ¶ 49. Plaintiff avers that the coin collection was returned with the bag, but that the gold bars were not. *Id.*

Chavez reported to Plaintiff that the gold bars were not returned. *Id.* at ¶ 50. Seven-to-ten days after he first sought to retrieve his son's possessions, Chavez returned to the Chaves County Sheriff's Office. *Id.* Again, Sedillo refused to give Chavez the gold bars. *Id.* at ¶ 51. According to

3

Plaintiff, that was when he understood that the officers would not be returning his gold bars to him. *Id.* at ¶ 52.

On February 20, 2019, Plaintiff filed a complaint in the Fifth Judicial District of Chaves County alleging various state and federal claims. *See generally*, Compl. Plaintiff named the Board of County Commissioners of the County of Chaves, Albert Padilla, and Michael Law as defendants. Compl. at ¶¶ 3, 5, 7. Plaintiff's first amended complaint added Tony Sedillo as a defendant. *See* FAC at ¶ 7. Following the filing of the operative complaint, the Board of County Commissioners of the County of Chaves and Tony Sedillo removed the case to federal court. *See* Not. at 1. On September 9, 2019, Plaintiff filed an unopposed motion to dismiss Law from the lawsuit, which the Court granted.[5] Accordingly, only County Defendants remain.

Now, County Defendants seek judgment on the pleadings with respect to Plaintiff's operative complaint on statute of limitations and qualified immunity grounds. Three of Plaintiff's ten claims are relevant to County Defendants' Motion and allege violations of 18 U.S.C. § 1983.[6] In Count 3 of the operative complaint, Plaintiff alleges a conspiracy existed to deprive Plaintiff of his constitutional rights. SAC at 14. In Count 7, he claims that Defendants deprived him of property in abrogation of his procedural due process rights under the Fourteenth Amendment. *Id.* at 21. Finally, in Count 8, Plaintiff claims that those same actions violated his substantive due process rights. *Id.* at 22. In Count 8, he also maintains that County Defendants violated his Fourth Amendment and Fifth Amendment rights as incorporated by the Fourteenth Amendment. *Id.*

## JUDGMENT ON THE PLEADINGS

---

[5] *See* STIPULATED MOTION TO DISMISS MICHAEL J. LAW (Doc. 21); ORDER DISMISSING MICHAEL J. LAW (Doc. 22).
[6] Because County Defendants seek dismissal of Plaintiff's federal claims, the Court will not discuss Plaintiff's state law claims.

County Defendants move to dismiss Plaintiff's federal claims under Rule 12(c), judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). Courts treat "[a] motion for judgment on the pleadings under Rule 12(c) . . . as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In doing so, courts must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007). A mere "formulaic recitation of the elements of a cause of action will not do." *Id.*

## DISCUSSION

1. **Count 3: Civil Conspiracy**

Plaintiff alleges a civil conspiracy existed between "[the] County and/or agents thereof" and Law. SAC at ¶ 92. But as previously explained, Plaintiff voluntarily moved to dismiss Law from the case, and the Court granted that motion. County Defendants argue that because Law is no longer a party to this lawsuit, Plaintiff cannot establish a conspiracy on the basis that a conspiracy requires two or more persons. Mot. at 25 (citing *Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. 1984)). In his Response, Plaintiff concedes that his civil conspiracy claim should be dismissed. Resp. at 16. He requests only that the Court dismiss this claim without prejudice. *Id.*

The Tenth Circuit instructs the Court to consider the following factors in determining whether a dismissal without prejudice is appropriate:

> the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a dismissal. A district court may also consider the present stage of litigation. These factors need not all be resolved in favor of the moving party for dismissal to be appropriate; likewise, they need not all be resolved in favor of the party opposing the motion to dismiss. Further, they are not exclusive; rather, they are guides for the district court.

*Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) (internal quotation marks and citations omitted). "But [a]bsent legal prejudice to the defendant, the district court normally should grant such a dismissal." *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005) (internal quotation marks omitted) (alteration in original).

The Court will dismiss Plaintiff's civil conspiracy claim without prejudice. In doing so, the Court acknowledges the early stage of litigation at which County Defendants' Motion arises. Indeed, discovery has yet to commence. Further, County Defendants fail to identify any legal prejudice that should preclude the Court from giving Plaintiff another bite at the proverbial apple with respect to this claim. The Court will thus dismiss Plaintiff's civil conspiracy claim without prejudice.

**2. Count 3: Fourth Amendment**

Within Plaintiff's Civil Conspiracy claim, he alleges a violation of the Fourth Amendment.[7] Both parties have proceeded as though Plaintiff is alleging a Fourth Amendment violation separate from his civil conspiracy claim. Mot. at 7–10; Resp. at 3–6; Reply at 1–4. Therefore, the Court will address the viability of that Fourth Amendment claim.

Plaintiff asserts that "he was deprived of his Fourth Amendment right . . . to be free from unreasonable searches and seizures by both the search of November 29–30, 2013, and the search by Law on March 26, 2015." SAC at ¶ 93.[8] County Defendants maintain that Plaintiff's claim falls outside the three-year statute of limitations to bring a Fourth Amendment challenge in this state.

"Section 1983 provides a federal cause of action, but in several respects . . . [the] federal law looks to the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Such is the case for statute of limitations—the federal law borrows from the statute of limitations "the State provides for personal injury torts." *Id.* Plaintiff and County Defendants agree that the applicable statute of limitations under New Mexico law is three years. N.M. Stat. Ann. § 37–1–8 ("Actions . . . for an injury to the person or reputation of any person [must be brought] within three years"); *accord Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014). The parties dispute, however, when the three-year limitations period began to run.

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are

---

[7] In the same Count, Plaintiff alleges that Law violated his substantive due process rights by holding him for several days following his arrest. *See* SAC at ¶ 93. Law, however, is no longer a party to this lawsuit, so the Court will not address this claim. Further, Plaintiff generally alleges that he was deprived of his property without due process of law. *Id.* Because Plaintiff brought a standalone claim alleging procedural due process violations, the Court will address that allegation separately below.

[8] Again, because Law is no longer a party to this lawsuit, the Court will not discuss Plaintiff's claim against him.

7

presumed to have accrued when the actions actually occur." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999) (quoting *Johnson v. Johnson County Comm'n Bd.,* 925 F.2d 1299, 1301 (10th Cir. 1991)). "[T]he standard rule" is that "[accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). "In particular, a civil rights action accrues when facts that would support a cause of action are or should be apparent." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (bracket and internal quotation marks omitted). "In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Id.* at 1216. A plaintiff need not know the full extent of the harm in order for the statute of limitations to begin to run. *See Varnell*, 756 F.3d at 1216. "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* (quoting *Wallace*, 549 U.S. at 391) (brackets omitted). "Were it otherwise the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

County Defendants maintain that the statute of limitations began to run on November 30, 2013, when officers purportedly violated Plaintiff's Fourth Amendment rights. Mot. at 9. Meanwhile, Plaintiff avers that the three-year statute of limitations did not begin to run until Plaintiff knew that he would not recover his gold bars. *See* Resp. at 3.[9] Plaintiff's Fourth Amendment claim, however, is tied to the November 2013 search. *See* SAC at ¶ 93 ("Plaintiff argues that he was deprived of his Fourth Amendment right under the U.S. Constitution to be free from unreasonable

---

[9] Plaintiff does not provide the Court with an exact date when he believes the clock began to run, but suggests in his operative complaint and Response that the clock began to run sometime in March 2017, when "Plaintiff became aware that the police were not going to return the [g]old [b]ars." Resp. at 2; *see also* SAC at ¶¶ 48–49, 52.

searches and seizures by . . . the search of November 29–30, 2013 . . . ."). He does not allege a Fourth Amendment violation in Count 3 with respect to the seizure of gold bars—that allegation is raised in Count 8. *See infra* Part 8(ii). Because the operative complaint focuses this claim on the November 29–30, 2013, search and because Plaintiff has not rebutted the presumption the the claim accrued when the search actually occurred, *see Beck*, 195 F.3d at 558, the Court finds that the three-year statute of limitations began to run on November 29–30, 2013. Plaintiff filed his Complaint on February 20, 2019, *see* Compl. at 1, well beyond the three-year statute of limitations to bring this Fourth Amendment claim. The Court will thus dismiss this Count 3: Fourth Amendment claim with prejudice.

3. **Count 7: Fourteenth Amendment Procedural Due Process**

Plaintiff alleges that County Defendants violated his procedural due process rights by negligently or intentionally depriving him of his property when no adequate state post-deprivation process exists. SAC at ¶¶ 130–131. Alternatively, Plaintiff avers a procedural due process violation occurred even if County Defendants did not act negligently or intentionally and regardless of whether an adequate state post-deprivation process exists. *Id.* at ¶ 132. County Defendants assert that they did not violate Plaintiff's due process rights, but if they did, they are entitled to qualified immunity. Mot. at 10, 15.

(i) Qualified Immunity

"The qualified-immunity doctrine protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013)). "Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts

may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Doing so, however, "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (brackets and internal quotation marks omitted) (emphasis in original). The Court evaluates "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). The Court "may address the two prongs of the qualified-immunity analysis in either order: '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings*, 913 F.3d at 1239, (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, ––– U.S. ––––, 137 S.Ct. 2151 (2017)). "[T]he onus in on the plaintiff to demonstrate" the two prongs of the qualified immunity inquiry. *Cummings*, 913 F.3d at 1239.

The Court will address the second prong—that is, whether right allegedly violated was clearly established at the time of the alleged violation. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (internal quotation marks omitted). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "[A] right is clearly established when a precedent involves materially similar conduct or applies with

obvious clarity to the conduct at issue." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal quotation marks omitted and emphasis removed). Again, the plaintiff bears the burden of directing the Court to authority that clearly establishes the right that was violated. *See Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1201 n.3 (10th Cir. 2017).

Here, Plaintiff fails to meet his burden. Instead of pointing the Court to authority tending to show that he is seeking vindication of a clearly established right, Plaintiff directs the Court to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1892), which held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established ***statutory*** or constitutional rights ***of which a reasonable person would have known***." Resp. at 11 (emphasis in Resp.) (quoting *Harlow*, 471 U.S. at 801). Plaintiff then claims that County Defendants violated N.M. Stat. Ann. § 31-18-15(A)(6). Plaintiff explains,

> [a]s a former Deputy District Attorney, Counsel can point to one "clearly established law" that applies to stealing a person's property: "Larceny consists of the stealing of anything of value that belongs to another . . . F. Whoever commits larceny when the value of the property stolen is over twenty thousand dollars ($20,000) is guilty of a second degree felony." 30-16-1(A) & (F) NMSA 1978. The punishment, established by law, for being convicted of a second degree felony is "for a second degree felony, nine years imprisonment." 31-18-15(A)(6) NMSA 1978.

Resp. at 10. Plaintiff's Response indicates a fundamental misunderstanding of qualified immunity jurisprudence. The Court's focus is not on whether a defendant violated state law, but rather, whether a defendant's conduct violated a clearly established constitutional right. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision [of state law]."); *Cummings*, 913 F.3d at 1243 ("Whether Director Dean violated clearly-established state law in failing to set CBA-based rates, however, is an entirely separate question from whether that

11

failure violated clearly-established federal law."). Given that Plaintiff bears the burden of presenting authority to overcome qualified immunity, this failure proves fatal to his position. The Court will dismiss this Count 7: Fourteenth Amendment Procedural Due Process claim with prejudice.[10]

4. **Count 8: Substantive Due Process; Fourth Amendment; Fifth Amendment**

In Count 8, Plaintiff alleges three constitutional violations. First, he claims that County Defendants violated his substantive due process rights. SAC at 22. Next, he asserts that County Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures. *Id.* Finally, Plaintiff maintains that County Defendants infringed his Fifth Amendment right to be free from deprivation of property without due process. *Id.* The Court will address each of these alleged constitutional violations below.

(i) Plaintiff may not proceed on a substantive due process theory.

The ultimate measure for determining whether a state actor's conduct violates substantive due process is whether "the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). To succeed on a substantive due process claim, a "plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006) (quoting *Uhlrig*, 64 F.3d at 574). More specifically, "a § 1983 violation based on substantive due process 'must be predicated on a state action manifesting one of two traditional forms of wrongful

---

[10] *See Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming the district court's decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983, because the plaintiffs failed to allege a constitutional violation and the defendant was entitled to qualified immunity).

intent—that is, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007) (quoting *Uhlrig*, 64 F.3d at 573).

With that said, substantive due process is a generally "unchartered area" in which the "guideposts for responsible decisionmaking . . . are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). And, as just described, the standards governing substantive due process are "broad and general." *Cummings*, 913 F.3d at 1240 (citing *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)). What guideposts the Supreme Court has provided, however, direct the Court to determine whether a specific constitutional amendment provides protection for the right a plaintiff seeks to vindicate. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 (1997). For example, the Supreme Court has held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The Tenth Circuit applied that guidance in the context of qualified immunity. In *Shrum v. City of Coweta, Okla.*, 499 F.3d 1132, 1145 (10th Cir. 2006), the court explained that "[w]here a plaintiff has recourse to an explicit textual source of constitutional protection, a more general claim of substantive due process is not available." *Id.* The Tenth Circuit elaborated that "[w]ithout a constitutional claim, [it] need not consider whether the law was clearly established." *Id.* Such is the case here.

Plaintiff clearly states that he is seeking vindication of his Fourth and Fifth Amendment rights as incorporated by the Fourteenth Amendment. SAC at ¶ 138. Even so, he argues that the

13

Court should apply the substantive due process "shocks-the-conscious" standard. *Id.* at ¶ 143. And fatally, Plaintiff does not allege separate actions that would support a substantive due process claim. As explained by both the Supreme Court and the Tenth Circuit, relying on a substance due process claim is inappropriate when an explicit textual source protects the allegedly violated right. *See Lanier*, 520 U.S. at 272; *Shrum*, 499 F.3d at 1145. Accordingly, the Court will dismiss with prejudice Plaintiff's Count 8: Substantive Due Process claim.[11]

(ii) Fourth Amendment Claim

Turning now to Plaintiff's Fourth Amendment claim, Plaintiff avers that "the deprivation of his property by Padilla, and/or Sedillo is in abrogation of his Fourth Amendment right[ ] . . . [to] be free from unreasonable searches and seizures . . . ." SAC at ¶ 139. In particular, he asserts that "Padilla did not list the gold bars on the inventory list and Sedillo refused to return the gold bars to Plaintiff[[12]] when such a demand was made."

The individual defendants assert that they are entitled to qualified immunity because the law is not clearly established. Mot. at 19–23 (relying on *Springer v. Albin*, 398 F. App'x 427, 436 (10th Cir. 2010), an unpublished Tenth Circuit opinion for the proposition that the law is not clearly established).[13] Plaintiff, however, does not address their qualified immunity argument in his Response—indeed, he does not once address the Fourth Amendment claim contained in Count 8.

---

[11] The Court need not address whether the law is clearly established, because Plaintiff failed to properly allege a violation of his substantive due process rights. *See Shrum*, 499 F.3d at 1145.

[12] Here, Plaintiff asserts that Sedillo refused to return the gold bars to him. SAC at ¶ 135. Yet, in Plaintiff's factual allegations, he maintains that Sedillo refused to give the gold bars to Chavez, Plaintiff's father. *Id.* at ¶¶ 49, 51.

[13] *Springer* held that "it was not clearly established [in 2005] that the agents' alleged conduct of stealing money after it was lawfully seized pursuant to a valid search warrant violated the Fourth Amendment." *Springer*, 398 F. App'x at 436. Furthermore, "an unpublished opinion can be quite relevant in showing that the law was *not* clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis in original); *cf. Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion . . . provides little support for the notion that the law is clearly established on [a] point.").

*See* Resp. at 12–16 (discussing only substantive due process with respect to Count 8). In this Circuit, the onus is on the plaintiff to point the Court to cases establishing that the law was clearly established. *See Cummings*, 913 F.3d at 1239. By failing to respond, Plaintiff has failed to meet his burden with respect to qualified immunity.[14] The Court will not do the work of Plaintiff's counsel for him. Accordingly, the Court will dismiss Plaintiff's Fourth Amendment claim asserted under Count 8 with prejudice.

    (iii)    Fifth Amendment Claim

In Count 8, Plaintiff also claims that "the deprivation of his property by Padilla, and/or Sedillo is in abrogation of his Fifth Amendment right[ ] . . . [to] be free from deprivation of property without due process of law . . . ." SAC at ¶ 140. But that cannot be the case. "From the earliest interpretations of this amendment, courts have agreed that the Fifth Amendment protects against actions by the *federal* government." *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) (emphasis added). As Plaintiff acknowledges, both Padilla and Sedillo are state actors. SAC at ¶ 142. Thus, Plaintiff fails to state a viable Fifth Amendment claim, and because no amendment will rectify the flaw with Plaintiff's Fifth Amendment claim, the Court will dismiss this Count 8: Fifth Amendment claim with prejudice.

    **5.** *Monell* **Liability**

Plaintiff does not plead a *Monell* claim in the operative complaint. Even so, County Defendants preemptively ask the Court to conclude that to the extent Plaintiff is attempting to pursue a *Monell* claim, Plaintiff has not alleged sufficient facts to support that claim. Mot. at 26. Plaintiff

---

[14] Plaintiff responded to the individual defendants' qualified immunity argument with respect to Count 7, procedural due process; yet, he failed to respond here. His selective response indicates that Plaintiff clearly had notice that the defendants may assert immunity from suit to another claim. Thus, the Court also construes Plaintiff's failure to respond to the qualified immunity arguments in this claim, as an acquiescence that the law is not clearly established and that Plaintiff could not meet his burden.

confirms that he is not making a *Monell* claim and even concedes he cannot establish a *Monell* claim. Resp. at 16. Given that assurance, the Court will dismiss this request as moot.

## CONCLUSION

IT IS THEREFORE ORDERED THAT County Defendant's Rule 12(c) Motion to Dismiss All Federal Claims Asserted Against County Defendants in Plaintiff's Second Amended Complaint (Doc. 25) is GRANTED IN PART and DENIED IN PART as follows:

(1) Plaintiff's civil conspiracy claim (Count 3) is DISMISSED without prejudice. To the extent County Defendants seek to dismiss this claim with prejudice, that request is DENIED.

(2) The remainder of Plaintiff's federal law claims are DISMISSED with prejudice.

(3) Because none of Plaintiff's federal law claims remain, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367. This case is REMANDED to the State of New Mexico, County of Chaves, Fifth Judicial District Court for adjudication of Plaintiff's state-law claims.

_____
SENIOR UNITED STATES DISTRICT JUDGE